## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **JAMES DAWN,** | ) | |
| **Petitioner** | ) | |
| | ) | |
| **v.** | ) | **Cr. No. 14-10072-DPW** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent**. | ) | |

### GOVERNMENT'S OPPOSITION TO MOTION TO VACATE SENTENCE
### PURSUANT TO 28 U.S.C. § 2255
### AND REQUEST FOR SUMMMARY DISMISSAL

The government hereby opposes the motion of petitioner James Dawn (the "petitioner" or "Dawn"), filed pursuant to 28 U.S.C. § 2255, to vacate his conviction and sentence. For the following reasons, Dawn's motion should be summarily denied.

### A. BACKGROUND

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") conducted a gun investigation in the area around Brockton, MA using a cooperating witness ("CW"). On May 1, 2013 the CW called Dawn and made arrangements to purchase a gun. The CW agreed to pay $1000 in exchange for a .45-caliber firearm. The ATF agents set up the CW with recording devices, $1000 cash, and searched the CW before and after making the purchase. At 8:40 p.m., the CW drove to Dawn's home in Brockton, MA. Dawn entered the CW's car to complete the transaction. The CW also set up future deals with Dawn, who promised to obtain guns for the CW from other sources he had. Rule 11 Transcript, pgs. 9-14.

On September 16, 2013, the CW called Dawn again at this home to purchase a .32-caliber pistol for the ATF investigation. After the phone call, ATF outfitted the CW with recording

1

devices, a car, and $1000 cash to pay for the gun.  At 12:00 p.m. that same day, the CW drove to Dawn's house.  Like the first time, Dawn got in the CW's car and completed the sale of the pistol.  After the transaction, the CW met up with ATF agents to hand over the gun and audio and visual recordings captured.

Two days later on September 18, 2013, the CW called Dawn to get a "Street Sweeper", a shotgun capable of firing multiple rounds.  The same protocol was followed: ATF set up the CW with recording devices and $2000 cash for the gun.  The CW then met Dawn at his home to complete the deal.  However, the gun provided to the CW was not a "Street Sweeper", and the deal did not go through at that time.  Later, the CW called Dawn again and decided to purchase the gun Dawn had showed him for a lower price, $1350.  That same evening, ATF outfitted the CW again with the recording devices and cash, and the CW met Dawn to purchase the gun.

After all of these purchases occurred, the ATF agents did more investigation into Dawn and found that he did not have a federal firearms license to sell the guns.  An ATF agent analyzed the firearms and ammunition concluding that they were manufactured outside of Massachusetts, therefore traveling in interstate commerce.

The audio and video recordings made by the CW captured images of Dawn's face and a partial view of the guns.  Furthermore, the audio evidence includes an incriminating conversation between Dawn, Dawn's brother and the CW negotiating the price of one of the guns.  See Sentencing Memo., pg. 3.

The Rule 11 hearing was on September 9, 2014. See Docket Entry 68.  The sentencing hearing was on January 13, 2015. See Docket Entry 69.

Defense counsel, Jaime Zambrana, provided an affidavit in support of the government's

2

opposition, which is attached as Exhibit A.[1]  In it, Zambrana described that he coordinated the

attack on a Suffolk Superior Court conviction with state defense counsel (¶ 5) and he

investigated attacking a Dorchester District Court conviction (¶ 6).

## B.  THE LEGAL LANDSCAPE

### 1.  Habeas Review Under 28 U.S.C. § 2255

28 U.S.C. § 2255 provides a means for collateral attack on a sentence under which a

federal prisoner is confined.  United States v. Haymen, 342 U.S. 205 (1952).  The law is "well-

settled" that "to obtain relief a prisoner must clear a significantly higher hurdle than would exist

on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982).  "A presumption of finality

attaches to criminal conviction once all direct appeals have been exhausted."  Singleton v. United

States, 26 F.3d 233, 236 (1st Cir. 1994); see also Barefoot v. Estelle, 463 U.S. 880, 887 (1983).

In order for the Court to grant relief under § 2255, the claimed error must be

jurisdictional, constitutional, "a fundamental defect which inherently results in a complete

miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair

procedure."  United States v. Addonizio, 442 U.S. 178, 185 (1979); Hill v. United States, 368

U.S. 424, 428 (1962).  In other words, "post conviction relief on collateral review is an

extraordinary remedy, available only on a sufficient showing of fundamental unfairness."

Singleton, 26 F.3d at 236; see also Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

### 2.  Ineffective Assistance of Counsel Claim

The Supreme Court of the United States set forth the well-established hurdle a habeas

---

1       Counsel Jaime Zambrana did not provide a copy of his case file in this matter despite requests from the government. See Docket Entry 91.  Zambrana has claimed that the file had water damage and was mostly destroyed.

petitioner must overcome in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) when claiming

ineffective assistance of counsel.  To prevail, a petitioner has the burden of showing both: (1)

that "counsel's performance was deficient . . . that counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2)

"that deficient performance prejudiced the defense . . . that counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Id.</u> at 687.  "Unless a

defendant makes both showings, it cannot be said that the conviction . . . resulted from a

breakdown in the adversary process that renders the result unreliable."  <u>Id.</u>  The First Circuit has

held repeatedly that in bringing an ineffective assistance of counsel claim the petitioner faces a

"highly demanding and heavy burden."  <u>Knight v. Spencer</u>, 447 F.3d 6, 15 (1st Cir. 2006) (citing

<u>Williams v. Taylor</u>, 529 U.S. 362, 393 (2000)); <u>see also</u> <u>Lema v. United States</u>, 987 F.2d 48, 51

(1st Cir. 1993) ("A petitioner bears a very heavy burden on an ineffective assistance claim.")

### a.  Dawn Bears the Burden of Demonstrating that his Counsel was Constitutionally Deficient

There are several principles that reviewing courts must follow in evaluating whether a

petitioner has met his "heavy burden" of demonstrating the first prong of <u>Strickland</u> review –

that the counsel was constitutionally deficient.  Most importantly, "judicial scrutiny of counsel's

performance must be highly deferential."  <u>Strickland</u>, 466 U.S. at 689; <u>see also</u> <u>Yeboah-Sefah v.</u>

<u>Ficco</u>, 556 F.3d 53, 70 (1st Cir. 2009) (same); <u>Jahagirdar v. United States</u>, 597 F. Supp. 2d 198,

202 (D. Mass. 2009) (same).  The reviewing "court must indulge a strong presumption that

counsel's conduct fall within the wide range of reasonable professional assistance."  <u>Strickland</u>,

466 U.S. at 689; <u>see</u> <u>also</u> <u>Pina v. Maloney</u>, 565 F.3d 48, 55 (1st Cir. 2009) (same); <u>Jahagirdar</u>,

597 F. Supp. 2d at 202 (same).

4

To prevail under <u>Strickland</u>'s first prong, the petitioner must show that counsel's representation fell below an "objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. As the Supreme Court emphasized, "in considering claims of ineffective assistance of counsel, we address not what is prudent or appropriate, but only what is constitutionally compelled." <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987) (citation omitted).  The petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgement," and the reviewing court must determine whether such alleged acts or omissions "were outside the range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.  When conducting such review, it is important that "the [reviewing] court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement." <u>Id.</u>

The First Circuit elaborated on this standard, holding "[i]t is only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it, that the ineffective assistance prong is satisfied." <u>Knight</u>, 447 F.3d at 15 (quotation omitted).  Furthermore, in evaluating whether the petitioner has met the burden of demonstrating that counsel's performance was "patently unreasonable," the reviewing court must view the decisions made "from counsel's perspective at the time" and must make every effort "to eliminate the distorting effects of hindsight." <u>Strickland</u>, 466 U.S. at 689; <u>see</u> <u>also</u> <u>Lema</u>, 987 F.2d at 51 (same).

The First Circuit also emphasized that "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonable effective assistance under the circumstances then obtaining." <u>United States v.</u>

<u>Natanel</u>, 938 F.2d 302, 309-10 (1st Cir. 1991); <u>see</u> <u>also</u> <u>Lema</u>, 987 F.2d at 51 (same).  The First

Circuit further explained that:

> Under <u>Strickland v. Washington</u>, . . . counsel is not incompetent merely because
> he may not be perfect.  In real life, there is room not only for differences in
> judgment but even for mistakes, which are almost inevitable in a trial setting, so
> long as their quality or quantity do not mark out counsel as incompetent.

<u>Arroyo v. United States</u>, 195 F.3d 54, 55 (1st Cir. 1999).

Finally, courts have held that the strong presumption in favor of a finding of competence

is "even stronger when reviewing the performance of an experienced trial counsel."  <u>Callahan v.</u>

<u>Campbell</u>, 427 F.3d 897, 933 (11th Cir. 2005).

### b.  <u>Dawn Bears the Burden of Demonstrating that he was Prejudiced by Counsel's Ineffective Assistance</u>

Under Strickland's second prong, Dawn also bears the burden of proving that he was

prejudiced by his counsel's ineffective assistance – i.e., the his counsel's errors "actually had an

adverse effect on the defense" and not merely that they "had some conceivable effect on the

outcome of the proceeding."  <u>Strickland</u>, 466 U.S. at 693.  The petitioner must show that there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome.  <u>Id.</u> at 694; <u>see</u> <u>also</u> <u>Matthews v. Rakiey</u>, 54 F.3d 908, 916 (1st Cir.

1995) (same).  In analyzing the prejudice prong, the reviewing court "must consider the totality

of the evidence before the judge or jury [,]" <u>Strickland</u>, 466 U.S. at 695, and this strength of the

evidence against the petitioner is an important consideration.

> [A] verdict or conclusion only weakly supported by the record is more likely to
> have been affected by errors than one with overwhelming record support.  Taking
> the unaffected findings as a given, and taking due account of the effect of the

6

errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Id.

## C. **ARGUMENT**

Dawn claims ineffective assistance of counsel because his guilty plea was not knowing and voluntary.  See Defendant Memorandum ("Def. Memo.") at pg. 1.  Counsel Jaime Zambrana, according to the defendant, was ineffective by promising that he would have Dawn's sentence reduced by challenging Dawn's previous state court convictions if he pleaded guilty thereby removing Dawn from being subjected to the Armed Career Criminal Act ("ACCA") enhancement.

At sentencing, the Court determined that Dawn had qualifying predicate convictions for the ACCA.  Dawn now claims that had he known he would be subject to the ACCA, he would have proceeded to trial instead.  See Defendant's Declaration at p. 2, ¶ 6 ("Had I known that Mr. Zambrana was unable to fulfill his promise . . . I would have instead proceeded to trial")

The evidence does not support Dawn's claim.  Indeed, the affidavit of Dawn's counsel, Jaime Zambrana, explicitly contradicts it. See Exhibit A.  In it, Zambrana asserted that although he discussed the possibility of challenging Dawn's underlying convictions, "I made no promise that any of these motions would be successful or that the convictions would be vacated."  Exhibit A, at ¶ 4.  Zambrana further states that he discussed the possibility of a Rule 35 motion with Dawn as well, but "I made no promise or guarantee regarding the results."  Id. at ¶ 7.

The government had a wealth of evidence against Dawn, including videos of controlled buys, which Dawn reviewed with counsel Zambrana prior to entering his plea.  Id. at ¶ 3.  After

consulting with Zambrana, Dawn decided to plead guilty, knowing full-well that the he was subject to the ACCA enhancement. Id.

### 1. **Dawn's Counsel was not Constitutionally Deficient**

Dawn claims Counsel Zambrana was deficient because he failed to get Dawn the sentence he promised.  Zambrana did nothing more than provide Dawn with estimates on what the sentence imposed could be could be, both with and without the ACCA enhancement. See Exhibit A at ¶¶ 3-4, 7.  Although a defense attorney cannot make a promise on a particular sentence, he can make a prediction.  United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999); see also Perkins v. United States, No. 16-288-LM, 2017 WL 627393, at *3 (D.N.H. Feb. 14, 2017) (citing Martinez, 469 F.3d at 1053).  In order for an inaccurate prediction of sentence to rise to the level of a constitutional violation, "there must be greater evidence . . . of the attorney's lack of a good-faith effort to discover and analyze relevant facts and discuss them with the client."  Martinez, 469 F.3d at 1053 (citing United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996)).

Multiple circuits have held that an inaccurate prediction of a sentence is not sufficient to sustain a claim of ineffective assistance of counsel.  See Knight v. United States, 37 F.3d 769, 775 (1st Cir. 1994) (citing United States v. Sweeney, 878 F.2d 68, 69 (2d. Cir. 1989); United States v. Arvanitis, 902 F.2d 489, 494-95 (7th Cir. 1990) (no ineffective assistance where claim was based solely on an inaccurate prediction of the sentence); United States v. Turner, 881 F.2d 684, 687 (9th Cir. 1989) (same)); see also Calabrese v. United States, 507 F.2d 259, 260 (1st Cir. 1974) (holding voluntariness of a plea cannot be attacked under § 2255 when the sentence exceeds what counsel thought it would be).

8

When evaluating Dawn's claim, the Court should look at evidence from the Rule 11 hearing.  United States v. Dunfee, 821 F.3d 102, 128 (1st Cir. 2013).  Declarations by a defendant at a Rule 11 hearing "carry a strong presumption of verity."  Dunfee, 821 F.3d at 128 (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  The District Court should give weight to the defendant's statements during those proceedings absent a "good reason for disregarding them." Dunfee, 821 F.3d at 128 (quotation omitted); see also United States v. Gates, 709 F.3d 58, 69 (1st Cir. 2013) ("A defendant is normally bound by the representations that he himself makes in open court at the time of his plea.").

a.  Zambrana did not promise Dawn a particular sentence.

Zambrana did not promise Dawn a particular sentence.  Instead, he simply told Dawn he would challenge his predicate convictions *in an attempt* to have Dawn's sentence lowered. Exhibit A at ¶¶ 4-7.  There is nothing in the Rule 11 hearing amounting to a promise, nor was there anything stated that would give rise to even the possibility of such a promise.  Dawn never mentioned of any promise or coercion at the Rule 11 hearing.  The Court informed Dawn at the Rule 11 hearing that the judge would decide his sentence based upon the Probation Office Presentence Report, and that Dawn and Zambrana would have the chance to object to it.  Rule 11 Transcript at pg. 16.  However, neither Dawn nor Zambrana objected to the finding that Dawn qualified for the ACCA enhancement as Dawn knew even before the Rule 11 hearing that he was subject to the enhancement.  Exhibit A at ¶ 3.

During sentencing hearing, Zambrana attempted to delay sentencing for the pending motions on Dawn's state court convictions, but the Court denied Zambrana's motion.  Zambrana even said then that, "if both motions are successful, and that's a big "if". . . I think if we came

back for sentencing at that point . . . Mr. Dawn would have more certainty as to what his

sentence is going to be." <u>See</u> Sentencing Hearing Transcript, pg. 5, lines 1-11.

Zambrana's statement at the sentencing hearing and his affidavit explicitly contradict

Dawn's claim that Zambrana promised him a specific sentence. <u>Id.</u>; Exhibit A at ¶¶ 6, 7.

Zambrana never promised Dawn that his sentence would be reduced (nor could he) but only that

he would attempt to overturn predicate convictions, which he did.

On his appeal, Dawn challenged the Rule 11 hearing, claiming that the hearing was

improperly conducted because the Court never explicitly asked Dawn if he had been coerced,

forced, etc. into pleading guilty.  However, the First Circuit Court of Appeals ruled this did not

amount to plain error, and affirmed his sentence.  <u>United States v. Dawn</u>, 842 F.3d 3 (1st Cir.

2016) (explaining that there were "at least three qualifying predicate convictions to support his

enhanced sentence under the ACCA.")

In response to Dawn's assertion that he only pleaded guilty because of Zambrana's

unfulfilled promise, the First Circuit correctly noted that "Dawn only points to his counsel's

statements in the criminal proceedings themselves.  And those statements, upon scrutiny, provide

weak support for his contention." <u>Dawn</u>, 842 F.3d at 6.  Furthermore, the First Circuit explained

that, "Dawn has not shown that any inquiry by the District Court into the kind of promise to

which Rule 11 refers actually would have uncovered that a promise of the type Dawn alleges was

in made in fact had been made." <u>Id.</u>  Moreover, Dawn does not point to any new evidence of this

promise now.  Instead, he only cites the same evidence in the form of a sworn statement by the

defendant.  <u>See</u> Defendant's Declaration.

Perhaps, the best evidence Dawn presents to prove the existence of the promise come from Zambrana's statements at the sentencing hearing in which he described the uncertainty of the lengths of the sentence, and did not promise a lower sentence.  <u>See</u> Sentencing Hearing Transcript, pg. 5, lines 1-11.

      b.  <u>Counsel Zambrana was not constitutionally deficient.</u>

Rather than give constitutionally deficient counsel, Zambrana tried to overturn state court convictions.  This was a good-faith effort on Zambrana's part and was well within the guidance of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); Exhibit A at ¶¶ 4, 7; <u>see</u> <u>also</u> <u>Martinez</u>, 469 F.3d at 1053.

The District Court for the District of Rhode Island recently addressed a similar § 2255 petition in <u>United States v. Vazquez</u>, No. 11-156-WES, 2017 WL 4685299 at *11 (D.R.I. Oct. 17, 2017).  In <u>Vazquez</u> the Court found that defense counsel's failure to deliver on a promise that the defendant's sentence would not be subject to certain enhancements did not amount to ineffective assistance of counsel.  <u>Id.</u>  During the Rule 11 hearing, the Court warned the defendant that the sentence would not be determined until a later date, and there would be an investigation into how the sentencing guidelines applied in his specific case.  <u>Id.</u>  Later, at the sentencing hearing, defense counsel unsuccessfully argued against the application of the enhancements.  <u>Id.</u> at *12 (explaining that after the defendant knew any estimates given to him by defense counsel may not reflect his ultimate sentence, the defendant cannot now complain of ineffective assistance of counsel for not receiving promised sentence).

Similarly, the Court asked Dawn questions to ensure his plea was knowing and voluntary before Dawn entered his guilty plea.  <u>See</u> Rule 11 Transcript, pgs. 3-15.  The Court explained to

11

Dawn the rights he was giving up, the evidence against him, and the penalties he was facing as a result of pleading guilty, including the enhanced maximum penalties if Dawn were found to be an armed career criminal.  Id.  After hearing everything the Court explained, Dawn declared under oath that he was guilty of the crimes charged.  Id. at pg. 15.

At the sentencing hearing, Zambrana argued for more time because of his effort to overturn two of Dawn's predicate convictions, but the Court denied it.  Dawn has no claim to ineffective assistance of counsel on this basis.  See Vazquez, at *12.

### 2.   The alleged promise by Zambrana did not prejudice Dawn.

Even if Dawn was able to show that Counsel Zambrana was constitutionally deficient, Dawn would still have to show that Zambrana's ineffective counsel prejudiced his case. Strickland, 466 U.S. at 693. In determining prejudice, the court must determine whether the defendant, but for the misrepresentations by counsel, would have proceeded to trial.  See United States v. Hill, 474 U.S. 52, 59 (1985).  The Court must examine whether or not the outcome at trial would have been different but for the attorney's mistake.  Hill, 474 U.S. 59-60 (explaining that Strickland analysis in cases of guilty pleas also looks at the potential outcome on a trial); Strickland, 466 U.S. at 688.

Although Dawn claims he would have gone to trial but for Zambrana's alleged promise, the Court cannot take the claim at face value.  Hill, 474 U.S. at 59.  There must be a reasonable probability sufficient to undermine the idea that the petitioner would have entered a guilty plea. See Ferrara v. United States, 456 F.3d 278, 293-94 (1st Cir. 2006) (citing Miller v. Angliker, 848 F.2d 1312, 1320 (2d. Cir. 1988)).  The determination is an objective inquiry.  Id. (explaining the

question is whether a reasonable defendant standing in the petitioner's shoes would likely have altered his decision to plead guilty absent the misconduct).

In his motion, Dawn makes a claim that he would have proceeded to trial absent Zambrana's alleged promise.  Declaration at pg. 2, ¶ 6.  However, Dawn's mere assertion is not enough to prove prejudice on its own.  Hill, 474 U.S. at 59.

Dawn received the minimum guideline sentence (180 months) after pleading guilty to the charge. The evidence against Dawn was overwhelming, and a reasonable defendant in Dawn's place would have pleaded guilty as well.  Ferrara, 456 F.3d at 293-94.

The outcome from Dawn's guilty plea is no different than if he had gone to trial.  After pleading guilty, Dawn received the minimum guideline sentence.  In addition, Dawn asserted that he was satisfied with the assistance of Attorney Zambrana at his Rule 11 hearing.  See Rule 11 Transcript, pg. 3, lines 20-23.  Dawn offered no evidence sufficient for a showing of prejudice, and as a result, Dawn's claim for ineffective assistance of counsel must fail.  Strickland, 466 U.S. at 693 (requiring the defendant to show "actually had an adverse effect on the defense").

### 3.   The alleged promise by Zambrana did not render Dawn's plea involuntary.

In determining the voluntariness of a plea, the Court must consider "all of the relevant circumstances surrounding [a plea]."  Brady v. United States, 397 U.S. 742, 749 (1970).  A guilty plea is made knowingly when the defendant enters it after being informed of the true nature of the charge against him and the consequences.  Bousely v. United States, 523 U.S. 614, 618 (1998); Boykin v. Alabama, 395 U.S. 238, 244 (1969).

The First Circuit held that "a defendant's miscalculation—even gross miscalculation—a[bout] the likely-length of his sentence does not render a guilty plea unknowing, involuntary, or unintelligent in any legally cognizable sense."  United States v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000); see also Knight, 37 F.3d at 775.  Likewise, the First Circuit held that a defendant cannot attack voluntariness in a § 2255 claim when counsel underestimates the sentence.  Calabrese, 507 F.2d at 260.

Here, Dawn pleaded guilty knowingly and voluntarily, as detailed at the Rule 11 hearing, with no improper promises, and has not produced any evidence to prove otherwise.  See Torres-Rosa, 209 F.3d at 9.

### D.  **CONCLUSION**

For all of the foregoing reasons, the government request this Court to summarily deny his motion, filed pursuant to 28 U.S.C. § 2255, to vacate his conviction and sentence.

Very truly yours,

ANDREW E. LELLING
United States Attorney

By:     s/ Glenn A. MacKinlay
        GLENN A. MACKINLAY
        Assistant U.S. Attorney

14

## **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:  s/ Glenn A. MacKinlay
GLENN A. MACKINLAY
Assistant United States Attorney