```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


JAMES DAWN,                    )
                               )    CRIMINAL ACTION NO.
            Petitioner,        )    14-10072-DPW
                               )
v.                             )    CIVIL ACTION NO.
                               )    18-10502-DPW
UNITED STATES,                 )
                               )
            Respondent         )
                               )
```

MEMORANDUM AND ORDER
October 11, 2019

This habeas corpus proceeding under 28 U.S.C. § 2255 arises from the 2014 convictions upon a guilty plea of the Petitioner, James Dawn, for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and for dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A).

On January 13, 2015, I sentenced Mr. Dawn to 180 months of incarceration, the mandatory minimum sentence as a result of the application of statutory career criminal provisions contained in the Armed Career Criminal Act of 1983 ("ACCA"). *See* 18 U.S.C. § 924(e) (providing penalties for persons who violate 18 U.S.C. § 922(g) and have three previous convictions "for a violent felony or serious drug offense, or both, committed on occasions different from one another…").

Mr. Dawn appealed his conviction and sentence, arguing (1) that errors during the plea colloquy rendered his decision to

plead guilty involuntary and (2) that his predicate offenses could no longer be considered violent felonies for purposes of the armed career criminal provisions in light of the Supreme Court's decision in *Johnson* v. *United States*, 135 S. Ct. 2551 (2015). The First Circuit affirmed, *United States* v. *Dawn*, 842 F.3d 3 (1st Cir. 2016), and the Supreme Court denied certiorari. *Dawn* v. *United States*, 136 S. Ct. 1361 (2017).

Mr. Dawn then filed this petition for habeas corpus recalibrating his claims to assert that his trial counsel improperly promised that he would not be sentenced as an armed career criminal if he pled guilty.

## I. BACKGROUND

### A. *Factual Background*

In the Spring of 2013, law enforcement agents started investigating the unlawful sale of guns in and around Brockton, Massachusetts. On May 1, 2013, a cooperating witness ("CW") called Mr. Dawn to negotiate a price for a firearm and ammunition. The CW purchased the firearm, a Haskell JHP .45-caliber pistol, from Mr. Dawn later that same evening.

On September 16, 2013, law enforcement officers again directed the CW to purchase another firearm from Mr. Dawn. Just after noon that day, Mr. Dawn met with the CW and showed him the firearm. He instructed the CW to wipe the firearm down to remove any fingerprints and then completed the transaction. Mr. Dawn told the CW that he had gotten the firearm, a Garate .32

caliber pistol, from his brother, who had obtained it from an unknown source. Law enforcement officers conducted surveillance during this meeting and created a video recording of the transaction.

After the transaction was completed, the CW turned the Garate pistol over to an agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), who determined that both the firearm and the ammunition in it had been manufactured outside of Massachusetts.

Shortly thereafter, Mr. Dawn contacted the CW about another firearm that Mr. Dawn wanted to sell. According to the CW, Mr. Dawn had obtained a "street sweeper" from an unknown source, who was scheduled to deliver the weapon to his home. The CW ultimately made arrangements to purchase the "street sweeper" from Mr. Dawn on September 18, 2013 at Mr. Dawn's home. After negotiating in person with Mr. Dawn and his brother that evening, the CW purchased the "street sweeper," a Mossberg model 500A, 12-gauge shotgun, from Mr. Dawn. The entire transaction was recorded through a wire worn by the CW.

At the time of these firearm transactions, Mr. Dawn did not have a license to sell firearms and had several prior felony convictions, including convictions in 1989 for Assault and Battery with a Dangerous Weapon, in 1992 for Assault with a Dangerous Weapon, and in 2000 and 2007 for Trafficking Cocaine.

3

### B. *Procedural Background and the Present Petition*

   1.   The Original Prosecution

On March 19, 2014, Mr. Dawn was indicted in this court on one count arising from the September 16, 2013 Garate pistol transaction he conducted with the CW, of being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1), and on one count of Dealing in Firearms without a License, in violation of 18 U.S.C. § 922(a)(1)(A) based on the three firearms transactions with the CW, which took place on May 3, 2013, September 16, 2013, and September 18, 2013. He was arrested on March 24, 2014 and in his initial appearance before Magistrate Judge Bowler,[1] the Government stated it believed Mr. Dawn was an armed career criminal and therefore subject to a maximum term of life imprisonment.[2]

On August 21, 2014, the parties notified me that Mr. Dawn intended to plead guilty to the charges without a formal plea agreement with the Government. I held a hearing pursuant to

---

[1] Mr. Dawn was represented at this time by Attorney Jaime Zambrana. Mr. Zambrana represented Mr. Dawn through his sentencing. New counsel was appointed to represent Mr. Dawn during his appeal to the First Circuit. In the petition now before me, Mr. Dawn is only challenging the performance of Mr. Zambrana, and I will refer to Mr. Zambrana throughout as "trial counsel."

[2] During the initial appearance, the Government did not state that Mr. Dawn was subject to a fifteen-year mandatory minimum sentence if he were found to be an Armed Career Criminal. The Government did state that, in the absence of the sentencing enhancement, Mr. Dawn faced a maximum penalty of ten years incarceration for the felon in possession charge and five years for the charge of dealing firearms.

4

Rule 11 of the Federal Rules of Criminal Procedure on September 9, 2014, during which I heard the basis for the charges and inquired of Mr. Dawn. I also reminded Mr. Dawn that I would make my own determination about his sentence based on my understanding of the facts of his case and inquired of him whether he understood the maximum penalties that he could face. At the close of the hearing, I determined that Mr. Dawn's decision to plead guilty was knowing and voluntary and accepted his plea of guilty.

On January 2, 2015, trial counsel moved to continue sentencing. Counsel indicated that he was in the process of challenging two of Mr. Dawn's prior convictions in the state courts and that at least one of the challenged convictions was a predicate offense for the purpose of the ACCA sentencing enhancement at issue here. I denied the motion during the sentencing hearing and stated that, if the collateral attacks in the state court were later successful, Mr. Dawn could file a motion to correct his sentence under Rule 35 of the Federal Rules of Criminal Procedure. I also permitted Mr. Dawn to speak to counsel about that process before moving forward with sentencing.

Mr. Dawn was sentenced on January 13, 2015 to 180 months incarceration, the mandatory minimum sentence for the felon in possession charge in light of my determination that Mr. Dawn was a statutory armed career criminal.

Mr. Dawn timely appealed his conviction and sentence. On appeal, he argued that my failure to inquire specifically whether his plea was the result of force, threats, or promises rendered his plea unknowing and involuntary. *Dawn*, 842 F.3d at 5. Had I asked him this question, he argued, I would have learned that trial counsel promised Mr. Dawn that he would "at least attempt to seek avoidance of the ACCA by collaterally attacking some of Dawn's prior convictions in state court." *Id*. at 6.[3]

The First Circuit affirmed the conviction and sentence, holding that "even if [it was] to assume that the District Court did plainly err in not directly inquiring about whether Dawn's counsel made any promises, Dawn has not shown how, but for such an error, it is probable that he would not have pled guilty." *Id*.

On March 20, 2017, the Supreme Court denied Mr. Dawn's petition for a writ of certiorari. *Dawn*, 137 S. Ct. 1361.

---

[3] Mr. Dawn also argued that his convictions for assault and battery with a dangerous weapon and assault with a dangerous weapon did not qualify as violent felonies under the ACCA. *Dawn*, 842 F.3d at 7. In particular, he argued that the Supreme Court's intervening decision in *Johnson* v. *United States*, 135 S. Ct. 2551 (2015) invalidated the First Circuit's prior determination that assault with a dangerous weapon was a predicate offense for purposes of the ACCA sentencing enhancement. *Dawn*, 842 F.3d at 7-8. The First Circuit stated that it had already "considered and rejected the same arguments" in a separate case decided a few months before and declined to grant relief on this basis. Mr. Dawn does not raise a *Johnson* issue directly in his petition for habeas relief.

6

### 2. The Present Petition

Mr. Dawn filed the present petition to vacate his sentence under 28 U.S.C. § 2255 on March 16, 2018. The petition alleged that Mr. Dawn's trial counsel was constitutionally ineffective because he consistently made unfulfilled and unfulfillable promises to Mr. Dawn. Trial counsel, Mr. Dawn argued, told him that if he pled guilty, he would not be subject to the ACCA sentencing enhancement because trial counsel would collaterally attack Mr. Dawn's predicate offenses in state court. Mr. Dawn says he also requested an evidentiary hearing on the question.

At the request of the Government, I ordered trial counsel to produce any documents relating to his representation of Mr. Dawn, and a declaration addressing the claims regarding his representation. The Government subsequently filed its opposition to the petition on July 20, 2018 and included as an exhibit the affidavit of trial counsel. Mr. Zambrana affirmed that he "discussed with Mr. Dawn the *possibility* of challenging the underlying convictions" to avoid the ACCA sentencing enhancement, but that he "made no promise that any of these motions would be successful or that the convictions would be vacated." *See* Dkt. No. 93-1 at ¶ 4 (emphasis added); *see also* ¶ 7 ("I made no promise or guarantee regarding the results."). The Government represented that trial counsel did not provide a copy of his case file because the file had mostly been destroyed

as a result of water damage. The Government did not press the issue further.

Mr. Dawn filed his reply on July 24, 2018 and again sought an evidentiary hearing to decide the matter. In his reply, Mr. Dawn acknowledged Mr. Zambrana's affidavit, but said he "maintains that counsel's false promises resulted in Dawn entering an unintelligent and guilty plea…"

## II. THE MERITS

Mr. Dawn's habeas petition presents a single basis for relief. In it, Mr. Dawn argues only that trial counsel was constitutionally ineffective because he consistently promised that if Mr. Dawn pled guilty, trial counsel would ensure that Mr. Dawn was not subject to the ACCA sentencing enhancement. I note at the outset that Mr. Dawn's petition for relief is timely,[4] and his claims are not procedurally barred.[5] Therefore,

---

[4] Section 2255 imposes a one-year statute of limitations on petitions for habeas relief that starts to run from the "date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). "For the purposes of starting the clock on § 2255's one-year limitation period, . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay* v. *United States*, 537 U.S. 522, 525 (2003). In cases like this, where a petition for certiorari was filed, "a conviction becomes final — and the one-year period therefore starts to run — when a petition for certiorari is denied." *In re Smith*, 436 F.3d 9, 10 (1st Cir. 2006) (per curiam). Mr. Dawn's petition is therefore timely because it was filed on March 16, 2018, within one year after the March 20, 2017 denial of his petition to the Supreme Court for a writ of certiorari.

[5] As a general rule, a federal prisoner seeking a writ of habeas corpus has procedurally defaulted claims that were not raised on

8

I will proceed directly to consider the merits of his ineffective assistance claim.

The Supreme Court has long recognized that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland* v. *Washington*, 466 U.S. 668, 685 (1984). "The right to counsel," it has explained, "plays a crucial role in the adversarial system . . . since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled." *Id*. (citing *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 275-76 (1942) (internal quotations omitted)).

Under *Strickland*, a prisoner seeking to show that trial counsel was ineffective must demonstrate "deficient performance by counsel resulting in prejudice." *Rompilla* v. *Beard*, 545 U.S. 374, 380 (2005). To satisfy the deficient performance requirement, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*,

---

direct review. *Bousley* v. *United States*, 523 U.S. 614, 622 (1998). However, the Supreme Court has also acknowledged that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro* v. *United States*, 538 U.S. 500, 504 (2003). In fact, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id*.

466 U.S. at 687. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington* v. *Richter*, 562 U.S. 86, 105 (2011).

Even if counsel is determined to have been ineffective, a petitioner is not entitled to relief unless he can also show prejudice. This requires a demonstration that "counsel's errors were so serious as to deprive the defendant of a fair trial" and to render the result unreliable. *Strickland*, 466 U.S. at 687. In the absence of a clear conflict of interest between the defendant and trial counsel, the defendant is generally obligated to "affirmatively prove prejudice." *Id*. at 693.

Here, Mr. Dawn focuses his attack on trial counsel's performance by contending that counsel promised him that if Mr. Dawn pled guilty, trial counsel "would avoid the enhanced sentence by challenging [Mr. Dawn's] prior convictions in state court." This promise, he argues, was both unfulfillable and material to his decision to plead guilty. Mr. Dawn also argues as a procedural matter that I should hold an evidentiary hearing to resolve the question whether trial counsel acted inappropriately. I start with this procedural issue before turning to the merits of Mr. Dawn's ineffective assistance claim.

### A. Mr. Dawn's Entitlement to a Hearing

Under the plain text of section 2255, I am obligated to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In interpreting this requirement, the First Circuit has made clear that a hearing is not required when "a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *Moran* v. *Hogan*, 494 F.2d 1220, 1222 (1st Cir. 1974).

It is well established that "evidentiary hearings on motions are the exception, not the rule" and "the petitioner bears the burden of establishing the need for an evidentiary hearing." *United States* v. *McGill*, 11 F.3d 223, 225 (1st Cir. 1993). "In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of the petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Id.; see also Shraiar* v. *United States*, 736 F.2d 817, 818 (1st Cir. 1984). I may also consider "the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *McGill*, 11 F.3d at 225 (citing *United States* v. *DiCarlo*, 575 F.2d 952, 954-55 (1st Cir. 1978), *cert. denied*, 439 U.S. 834 (1978)).

In this case, I decline to grant Mr. Dawn's request for an evidentiary hearing. Mr. Dawn's claim that trial counsel made an improper promise is "conclusively refuted . . . by the files and records of the case." *See Moran*, 494 F.2d at 1222. By Mr. Dawn's account, his trial counsel stated that he would "challeng[e] [Mr. Dawn's] prior convictions in state court." Beyond a blanket statement that he would not have pled guilty but for trial counsel's statements concerning collateral challenges to his state convictions, there is nothing of record to suggest that trial counsel improperly promised Mr. Dawn that his state court convictions would in fact be overturned or that he would not be subject to the ACCA enhancement.

Mr. Dawn was advised repeatedly by me, prior to sentencing, that he could face a sentencing enhancement under ACCA. He was also advised during his sentencing that a collateral attack on his predicate offenses was ongoing in state court and that I would consider a motion to correct his sentence *if* it was successful. The First Circuit, on direct appeal, specifically held that Mr. Dawn had not shown that trial counsel made "the kind of promise to Dawn on which his Rule 11 challenge depends." *Dawn*, 842 F.3d at 7.

Mr. Dawn has not presented me with anything that was not previously presented to the First Circuit on direct appeal. Upon review of the files and the records in this case, I find his claim of an actionable promise by his trial counsel to be

refuted conclusively.  Thus, the record for this petition for habeas relief is insufficient to entitle Mr. Dawn to an evidentiary hearing.

Moreover, if I were to accept — which I do not — Mr. Dawn's statement that trial counsel promised that he would not receive a sentencing enhancement, I would still conclude, Mr. Dawn's petition is "inadequate on its face" to entitle him to relief. *Moran*, 494 F.2d at 1222.  As I explain below, the facts Mr. Dawn alleges, even if true, do not entitle him to habeas relief.  *See Shraiar*, 736 F.2d at 818.

Accordingly, for present purposes, I hold that an evidentiary hearing as requested by Mr. Dawn is unnecessary.

## B.  *Ineffectiveness*

Even if I were to accept Mr. Dawn's contention that trial counsel promised him that he would challenge Mr. Dawn's predicate offenses, and that this would result in his avoiding the ACCA sentencing enhancement, Mr. Dawn is entitled to relief only if this promise rendered counsel constitutionally ineffective.  In other words, Mr. Dawn must show that, by making such a promise, trial counsel made an error that was "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  The Sixth Amendment "guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough* v. *Gentry*, 540 U.S. 1, 8 (2003).

As a general rule, a defendant cannot maintain a claim for ineffective assistance on the basis that his attorney inaccurately predicted the sentence that the defendant would face were he to plead guilty. *See, e.g.*, *Knight* v. *United States*, 37 F.3d 769, 775 (1st Cir. 1994); *United States* v. *Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999). Nevertheless, a defense attorney can still be considered ineffective if he explicitly promises his client a particular sentence, *Martinez*, 169 F.3d at 1053, or "gross[ly] mischaracteriz[es] . . . the likely outcome" of the case. *Iaea* v. *Sunn*, 800 F.2d 861, 869 (9th Cir. 1986); *see also, generally, Strader* v. *Garrison*, 611 F.2d 61 (4th Cir. 1979).

Absent explicit coercion, then, a defendant can only maintain a claim for ineffective assistance on these premises if he was affirmatively misled about the consequences of pleading guilty such that the decision was not fully knowing and voluntary.[6] That is not the case here, especially in light of the fact that, under *Strickland*, "there is a 'strong

---

[6] The decision to plead guilty, like the decision to testify (or not) at trial, is fundamental to a defendant's right to present a defense and "may not be waived by counsel on the defendant's behalf." *See, e.g.*, *Lema* v. *United States*, 987 F.2d 48, 52 (1st Cir. 1993). *Cf. McCoy v. Louisiana*, 138 S.Ct. 1500, 1503, 1508 (2018) (defendant has the "right to choose the objective of his defense," even over his counsel's objection or in contravention of counsel's advice. The Supreme Court cited *Faretta v. California*, 422 U.S. 806, 819-20 (1975), for additional guidance that defendants have the right to the "assistance of counsel," who "however expert, is still an assistant").

14

presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance'" that "courts should avoid second-guessing..." *Knight* v. *Spencer*, 447 F.3d 6, 15 (1st Cir. 2006).

As discussed above, there is no indication here that trial counsel made any improper promises to Mr. Dawn about the prospects for avoiding an ACCA sentencing enhancement. Nor can I say, based on the record before me, that trial counsel's representations to Mr. Dawn about his options for collateral review in state court rendered his decision to plead guilty unknowing and involuntary. At a minimum, Mr. Dawn was informed about the ACCA sentencing enhancement several times in open court. During his plea colloquy, he indicated that he understood that I would make a final determination about his sentence and that he was exposing himself to the possibility of an ACCA sentencing enhancement. Trial counsel represented during sentencing that it was unclear if his motions in state court would succeed and that he had discussed the various options with his client. Trial counsel also was given the opportunity to explain to Mr. Dawn the possibility of a motion under Rule 35 if the collateral challenges to Mr. Dawn's predicate convictions were successful. The fact that there was uncertainty about the future success of the pending motions in state court makes manifest that Mr. Dawn knew the success of these attacks was not guaranteed.

I also observe that there is no indication that trial counsel did not zealously pursue collateral relief in the state courts. Trial counsel asked me to continue the sentencing to allow for additional time to pursue a motion for new trial in Dorchester District Court and coordinated with Mr. Dawn's state court counsel to challenge his convictions in Suffolk Superior Court. The fact that his motion to continue was denied and his efforts in state court were unsuccessful does not mean that trial counsel was constitutionally ineffective. At best, Mr. Dawn can argue that trial counsel was overly optimistic about the prospect of success on his claims in state court and on the speed with which those claims would be resolved. I conclude this is insufficient to render trial counsel ineffective for purposes of the Sixth Amendment.

## C.  *Prejudice*

Even if trial counsel had made an explicit promise to Mr. Dawn about his eligibility for the ACCA sentencing enhancement (although I find on this record that he did not), I cannot say that Mr. Dawn suffered prejudice. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart*, 474 U.S. 52, 59 (1985). Whether the defendant would have succeeded at trial is largely irrelevant; instead, the focus of the inquiry is on whether "the defendant

was prejudiced by the denial of the entire judicial proceeding . . . to which he had a right." *Lee* v. *United States*, 137 S. Ct. 1958, 1965 (2017).

I am not obligated simply to accept Mr. Dawn's statement that he would have chosen to go to trial had he known trial counsel would have been unable to get his prior convictions dismissed. Instead, I consider the "elementary question" of whether "a reasonable defendant standing in the petitioner's shoes would likely have altered his decision to plead guilty" in these circumstances. *Ferrara* v. *United States*, 456 F.3d 278, 294 (1st Cir. 2006). Through the "wide-angled lens" *Ferrara* offers for perspective, *id.*, I cannot say that he would. As the First Circuit observed, the Government's evidence against Mr. Dawn was overwhelming, *Dawn*, 842 F.3d at 7, and Mr. Dawn was consistently advised, both by me and by Magistrate Judge Bowler, that he could potentially be sentenced as an Armed Career Criminal. Mr. Dawn was given the opportunity to object to his classification as an Armed Career Criminal in the Presentence Report and to discuss with trial counsel, the possibility of filing a motion to correct his sentence under Rule 35 if he successfully challenged his predicate convictions in state court. He, nevertheless, proceeded to sentencing without any effort to withdraw his plea.

Mr. Dawn was not prejudiced by any improper promise made by his counsel because he was fully aware that he faced the

17

possibility of a mandatory minimum sentence under the ACCA and made his decision to plead guilty in light of that. *See, e.g.*, *United States* v. *Vazquez*, No. 11-CR-156-WES, 2017 WL 4685299 at *11-12 (D. R.I. Oct. 17, 2017) (holding that, in light of the court's inquiry of the defendant during the plea colloquy, he was adequately forewarned that any predictions about his potential sentence were just predictions and therefore, that the defendant was not prejudiced by counsel's performance); *see also, e.g.*, *United States* v. *Thornton*, 23 F.3d 1532, 1533-34 (9th Cir. 1994) (per curiam) (holding that, when the district court advises a defendant of the possibility of a particular sentence during his plea colloquy, the defendant is not prejudiced by his counsel's predictions regarding a lower sentence).

I conclude that even if trial counsel was ineffective (although I have concluded that, in fact, he was not), Mr. Dawn suffered no prejudice because I find no reasonable defendant in his circumstances would have altered his plea of guilty.

### III. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus under § 2255 is DENIED.

*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE